IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEFFREY B. MORGAN<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 07-205C<br>(Judge George W. Miller) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING THE CLAIMS REMAINING TO BE ADJUDICATED**


OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile
Counsel of Record

**Filed electronically**

Edgar James
James & Hoffman
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Counsel for Plaintiff


July 31, 2008

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. PLAINTIFF'S COMPLAINT MAY NOT BE DISMISSED UNDER RCFC 12(c) FOR FAILURE TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. DETERMINATIONS BY THE COURTS OF THE LAW APPLICABLE TO "TIME WORKED" UNDER FLSA HAVE CHANGED SIGNIFICANTLY SINCE ADAMS . 3

III. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH REQUIRED HOME/WORK DRIVING IS FLSA COMPENSABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV. THE EMPLOYEE COMMUTING FLEXIBILITY ACT SUPPORTS PLAINTIFF'S ENTITLEMENT TO FLSA COMPENSATION FOR HOME/WORK DRIVING . . . . 19

V. THE ADAMS CASE DID NOT INVOLVE DIVERSION INVESTIGATORS . . . . . . 23

VI. STARE DECISIS DOES NOT APPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**PAGE**

## CASES

AARP v. EEOC, 390 Fed. Supp. 2d 437 (E.D. Pa. 2005), aff'd on other grounds
489 F.3d 558 (3d Cir. 2007), reh'g en banc denied
2007 U.S. App. LEXIS 30556 (3d Cir. Aug. 21, 2007),
cert. denied 128 S. Ct. 1733 (2008), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8,9

Abbott v. United States,
204 F.3d 1099 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Adair v. United States,
497 F.3d 1244 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied,
219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) . . . . . . . passim

Am. Fed'n of Gov't Employees v. Office of Personnel Management,
821 F.2d 761 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Angelo v. United States,
57 Fed. Cl. 100 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Armour & Co. v. Wantock,
323 U.S. 126 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

AT&T Corp. v. Portland,
216 F.3d 871 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,14

Avenues in Leather v. United States,
423 F.3d 1326 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bobo v. United States, 37 Fed. Cl. 690 (1997),
aff'd, 136 F.3d 1465 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Billings v. United States,
322 F.3d 1328 (Fed. Cir. 2003), cert. denied, 540 U.S. 982 (2003) . . . . . . . . . . . . . 17,18

Brown v. Allen,
344 U.S. 443 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Chessman v. Teets,
354 U.S. 156 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Chevron U.S.A. Inc. v. NRDC,
467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Coke v. Long Island Care at Home, Ltd.,
462 F.3d 48 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Coke v. Long Island Care at Home Ltd.,
376 F.3d 118 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Doe v. United States,
372 F.2d 1347 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Erie County Retirees Association v. County of Erie,
220 F.3d 193 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8,9

Fuller v. Teachers Insurance Company, E.D.N.C.
2007 U.S. Dist. LEXIS 69845 (Sept. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . passim

Long Island Care At Home, Ltd. v. Coke,
127 S. Ct. 2339 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Mackey v. Nationwide Insurance Companies,
724 F.2d 419 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,12

Martin v. Texas,
382 U.S. 928 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Mendenhall v. Cedar Rapids, Inc.,
5 F.3d 1557 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

National Cable & Telecommunications Association v. Brand X Internet Services,
545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Neal v. United States,
516 U.S. 284 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reich v. New York City Transit Authority,
45 F.3d 646 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rotech Healthcare, Inc. v. United States,
71 Fed. Cl. 393 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

Singh v. City of New York, No. 06-2969, 2008 WL 1885327
(2nd Cir. Apr. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

Trafficante v. Metropolitan Life Ins. Co.,
409 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Carver,
260 U.S. 482 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Warner-Lamber Co. v. United States,
425 F.3d 1381 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Zumerling v. Devine,
769 F.2d 745 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATUTES**

29 U.S.C. § 201 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

29 U.S.C. § 204 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. §§ 251-262. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

31 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

31 U.S.C. § 1349 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

47 U.S.C. § 151 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**REGULATIONS**

5 C.F.R. § 551.401 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,17

5 C.F.R. § 551.422 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,17

41 C.F.R. § 102-5 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## MISCELLANEOUS

Colloquium, *Panel Discussion on Intra-Circuit Conflicts*,
11 Fed. Cir. B.J. 623 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Dept. of Labor, Wage and Hour Div.,
F.O.H. § 31d00 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Federal Pay Administration Under the Fair Labor Standards Act,
45 Fed. Reg. 85659 (Dec. 30, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FRAP 35(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

FRCP 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FPM Letter 551-10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,15

Proposed Rules of the Office of Personnel Management, Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 49580 (July 25, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 15

Proposed Rules of the Department of Labor Regulations,
73 Fed. Reg. 43654 (July 28, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

RCFC 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEFFREY B. MORGAN | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 07-205C |
| | ) | (Judge George W. Miller) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING "DRIVING TIME" CLAIMS**

On June 30, 2008, defendant filed a motion for judgment on the pleadings under RCFC 12(c) ("Def. Mot. ___" hereinafter), seeking dismissal of plaintiff's "home/work" driving ("driving") claims based upon the Federal Circuit's decision in Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) ("Adams").

Plaintiff is an employee of the Drug Enforcement Administration ("DEA") employed as a Diversion Investigator. Plaintiff submits that for several reasons, including recent decisions of the United States Supreme Court in Long Island Care At Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007) ("Coke"), and National Cable & Telecommunications Association v. Brand X Internet Services, 545 U.S. 967 (2005) ("Brand X"), and distinguishing facts and law, defendant is not entitled to the RCFC 12(c) judgment on the pleadings it seeks.

Further, defendant has not submitted any facts by way of affidavits or declarations to support its motion. Instead defendant has made factual representations based upon unverified statements by defendant's counsel to support its motion. For example, it asserts without any factual support that "[t]he home-to-work driving issue in this case is the same as the issue decided in Bobo and

Adams. The activity in question – driving between home and work in a Government vehicle – is the same. Like the positions involved in Bobo and Adams, the position involved here – Drug Enforcement Administration ("DEA") Diversion Investigator – concerns law enforcement, and, like most of the plaintiffs in Adams, the plaintiff in this case is an investigator, although not a criminal investigator." Def. Mot. at 2. In fact, however, driving by Diversion Investigators is engaged in as part of "field work" provided for under 31 U.S.C. § 1344 and 41 C.F.R. § 102-5, and involves duties not involved in Adams and Bobo. See infra at 24-26. And the Diversion Investigator position was not considered or ruled upon in either Adams or Bobo.

## I. PLAINTIFF'S COMPLAINT MAY NOT BE DISMISSED UNDER RCFC 12(c) FOR FAILURE TO STATE A CLAIM

This lawsuit involves the claim that the plaintiff has been improperly treated by defendant as exempt from the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and that upon a determination that he was wrongfully treated as exempt by defendant, FLSA back pay would flow therefrom. Thus, the claim for back wages for home/work driving is simply part of plaintiff's claimed back pay owed resulting from his FLSA exempt status which defendant has conceded was mistaken, and which has been corrected by defendant.

As to the sufficiency of complaints, the Supreme Court declared as follows in Scheuer v. Rhodes, 416 U.S. 232, 236 (1974):

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the

> allegations of the complaint should be construed favorably to the pleader.
>
> "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In this case, the complaint declares that the overtime pay sought by plaintiff includes "but [is] not limited to hours during which the defendant and its officers and agents directed and/or suffered or permitted plaintiff to work without paying him any compensation whatsoever, including travel, training and other work performed by plaintiff on defendant's behalf." Complaint, p. 4. Plaintiff believes that the reference to "travel," and the federal regulations applicable thereto at 41 C.F.R. § 102-5 (see Plaintiff's Exhibit 1 attached hereto which describes the circumstances of plaintiff's driving of defendant's vehicles between home and work), satisfy any need for further elaboration of the nature of his driving claims at this preliminary stage of this proceeding. Suffice it to say that plaintiff believes his FLSA complaint is entitled to survive defendant's motion for judgment on the pleadings under Scheuer v. Rhodes, supra.

## II. DETERMINATIONS BY THE COURTS OF THE LAW APPLICABLE TO "TIME WORKED" UNDER FLSA HAVE CHANGED SIGNIFICANTLY SINCE ADAMS.

Defendant's claim that the decision of the Federal Circuit in Adams requires dismissal of plaintiff's home/work driving claims in this case is mistaken for another reason. In Adams, a panel of the Federal Circuit held that occupational code 1811 GS-12 Federal criminal investigators, who were issued government vehicles by defendant and were required by defendant to drive those vehicles between home and work each day so they could respond to emergencies at any time, were not entitled to be compensated for such driving under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA"). In so holding, the panel concluded that to entitle the plaintiffs to compensation

under FLSA for "merely commuting in a government-owned vehicle is insufficient, the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving." 471 F.3d at 1325.

Plaintiff submits that whatever else may be said regarding the panel's conclusion in Adams that the driving involved there was not FLSA compensable, the reasoning in Adams has been nullified under the Supreme Court's decisions in Coke and Brand X.

In Coke, the Supreme Court held that the Second Circuit's twice-stated conclusion[1/] that home healthcare workers were covered by FLSA was contrary to the United States Department of Labor's ("DOL") position set forth in its FLSA regulations and interpretations which declared such home healthcare workers exempt from FLSA coverage. The Supreme Court ruled in Coke that courts are obligated to defer to regulations and interpretations of agencies entrusted to administer statutes, formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress." 127 S. Ct. at 2345 (citing Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843 (1984)). As stated by the Supreme Court in Coke: "When an agency fills such a 'gap' reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding." Id. at 2345-46 (internal citations omitted).

In concluding that under DOL FLSA regulations and interpretations home healthcare workers employed by parties other than the individual recipients of their services are FLSA exempt, the Court stated:

> [T]he ultimate question is whether Congress would have intended, and expected, courts to treat an agency's rule, regulation, application of a statute, or other agency action as within, or outside, its

[1/] See Coke v. Long Island Care at Home Ltd., 376 F.3d 118 (2nd Cir. 2004) and Coke v. Long Island Care at Home, Ltd., 462 F.3d 48 (2nd Cir. 2006).

> delegation to the agency of "gap-filling" authority. Where an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and where the rule itself is reasonable, then a court ordinarily assumes that Congress intended it to defer to the agency's determination.

Id. at 2350-51 (emphasis in the original) (internal citations omitted).

Another recent Supreme Court decision that is equally applicable herein as Coke, and which closely resembles the circumstances presented here is Brand X. In a Ninth Circuit decision, see 345 F.3d 1120, 1130-1131 (2003), that court reversed the conclusion of the Federal Communications Commission ("FCC"), that under the 1996 amendments to the Communications Act, 47 U.S.C. § 151 et seq., as amended, cable companies providing cable modem services were exempt from mandatory regulation. In doing so the Ninth Circuit relied upon "the stare decisis effect of its decision in AT&T Corp. v. Portland, 216 F.3d 871 (9th Cir. 2000) . . ." ("Portland") which "held that cable modem service was a 'telecommunications service' . . ." 545 U.S. at 979.[2/] The Court of Appeals reasoned in Brand X that Portland's holding "overrode the contrary interpretation reached by the Commission . . ." Id. at 980.

On certiorari, the Supreme Court reversed, declaring as follows:

> The Court of Appeals declined to apply Chevron because it thought the Commission's interpretation of the Communications Act foreclosed by the conflicting construction of the Act it had adopted in Portland. See 345 F.3d, at 1127-1132. It based that holding on the assumption that Portland's construction overrode the Commission's, regardless of whether Portland had held the statute to be unambiguous. 345 F.3d, at 1131. That reasoning was incorrect.

---

[2/] The Supreme Court noted that the court in Portland "was not reviewing an administrative proceeding." Id. at 980.

> A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion. This principle follows from Chevron itself. Chevron established a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." Smiley, supra, at 740-741, 135 L. Ed. 25, 116 S. Ct. 1730. Yet allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute, as the Court of Appeals assumed it could, would allow a court's interpretation to override an agency's. Chevron's premise is that it is for agencies, not courts to fill statutory gaps. See 467 U.S., at 843-844, and n. 11, 81 L. Ed. 2d 694, 104 S. Ct. 2778. The better rule is to hold judicial interpretations contained in precedents to the same demanding Chevron step one standard that applies if the court is reviewing the agency's construction on a blank slate: Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.

Id. at 982-83.

In this case the identical situation is presented. In Adams, the Federal Circuit, in reliance upon its earlier decision in Bobo,[3/] held that the plaintiffs' home/work driving was non-compensable, even though FLSA non-exempt criminal investigators had been paid by defendant for such driving under OPM's regulations for more than twenty years. 471 F.3d at 1327. "[U]nder [FPM Letter No. 551-10] FLSA non exempt officers were indeed compensated for their commute time." Id. (emphasis in original).

Thus, under both Coke and Brand X, it is the agency's reasonable regulations and interpretations that must be respected, deferred to, and conclusively be applied by the courts, absent

[3/] "Bobo still teaches that commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimus. That is the case here." Id. at 1328.

a finding by a court of "unambiguous terms of the statute" that "leaves no room for agency discretion. . . ." Id.

Two recent district court decisions demonstrate how Brand X has changed the relationship between a trial court and its reviewing court when examining agency regulations under silent or ambiguous statutes: AARP v. EEOC, 390 F. Supp. 2d 437, 441 (E.D. Pa. 2005), aff'd on other grounds, 489 F.3d 558 (3d Cir. 2007), reh'g en banc denied 2007 U.S. App. LEXIS 30556 (3d Cir. Aug. 21, 2007), cert. denied 128 S. Ct. 1733 (2008) (hereinafter "AARP II"), and Fuller v. Teachers Insurance Company, 2007 U.S. Dist. LEXIS 69845 (E.D.N.C. Sept. 19, 2007) (hereinafter "Fuller").

**a. AARP II**

In March of 2005, Judge Anita Brody of the U.S. District Court for the Eastern District of Pennsylvania issued a permanent injunction against the Equal Employment Opportunity Commission ("EEOC") prohibiting it from establishing and implementing a proposed rule regarding the Age Discrimination in Employment Act ("ADEA"). AARP v. EEOC, 383 F. Supp. 2d 705, 706 (E.D. Pa. 2005) (hereinafter "AARP I") (citing 68 Fed. Reg. 41,542, 41,542 (July 14, 2003)) (the proposed rule would alter, reduce, or eliminate employer-sponsored retiree health benefits when retirees become eligible for Medicare or a State-sponsored retiree health benefits program). Judge Brody specifically noted that the Third Circuit's decision in Erie County Retirees Association v. County of Erie, 220 F.3d 193 (3d Cir. 2000) (hereinafter "Erie") bound the District Court to deny the agency's attempt to change the regulation, and that the agency's determination failed under Chevron. See AARP II, 390 F. Supp. 2d at 441.

EEOC filed a timely notice of appeal. Id. at 441. Shortly after Brand X was decided, EEOC sought and was granted a remand by the Third Circuit. Id. EEOC was then granted leave to file a motion for relief from judgment under FRCP 60(b). Id.

No longer bound by the Third Circuit precedent, and required to defer to EEOC's new rule interpreting the statute at issue (29 U.S.C. § 623 (a)(1)), Judge Brody held that the EEOC's proposed exemption satisfied Chevron at step one and step two, and therefore was a "permissible" exercise of agency discretion. Id. at 441-42.

In AARP II, Judge Brody specifically noted that when she decided AARP I she was not free to review the statute for ambiguity because: "I did not write on a clean slate, but rather was bound by the Third Circuit's decision in [Erie] that the ADEA prohibited the employer practice at issue." Id. at 444 (citing AARP I, 383 F. Supp. 2d at 706). Prior to Brand X, only in the absence of the Erie decision would the district court have been free to find for itself that the statute was ambiguous and therefore reach Chevron step two. AARP II, 390 F. Supp. 2d at 444-45. Foreclosed by Erie, Judge Brody did not analyze the EEOC's proposed rulemaking under Chevron step two at all, and granted summary judgment to AARP. Id. at 445. On appeal, the EEOC could then have requested that the Third Circuit reverse its previous holding in Erie in favor of the agency's new statutory interpretation.

In reviewing her previous decision in light of Brand X, Judge Brody noted that "only judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." Id. (citing Brand X, 125 S. Ct. at 2700) (emphasis added). Analyzing her decision in AARP I, Judge Brody declared that Brand X commanded the "broader proposition that a prior court interpretation of a statute cannot trump a subsequent agency interpretation unless the court holds that its interpretation is the only permissible, not merely the best, construction of the statute." AARP II, 390 F. Supp. 2d at 447 (citing Brand X, 125 S. Ct. at 2701) (emphasis added). Therefore, unless a court's holding states that it is the "'only permissible' interpretation, the court decision does not foreclose

a later, differing agency interpretation." Id. at 448 (citing Brand X, 125 S. Ct. at 2701) (emphasis added).

Judge Brody then analyzed Erie to determine if it had held that its interpretation of the statute was the "only permissible" interpretation. Finding that it did not, she re-applied Chevron with Brand X deference to the agency's determination (i.e. determined if the agency's proposed rulemaking was a "reasonable" interpretation of the ADEA). AARP II, 390 F. Supp. 2d at 448-59. Having found that the EEOC's determination was a "permissible" interpretation and thus satisfied Chevron step two, Judge Brody vacated her prior permanent injunction. Id. at 462.

Thus, AARP II stands for the proposition that where a district court has found that a circuit court's prior judicial interpretation of a rule foreclosed deference to the agency, upon reconsideration the court may rely upon Brand X to hold the prior judicial determination to be non-binding (unless it is the "only possible" statutory construction) and give broad deference to an agency's rulemaking authority.

**b. Fuller**

On September 19, 2007, Judge James Fox of the United States District Court for the Eastern District of North Carolina considered a simultaneous FRCP 12(b)(6) motion to dismiss and FRCP 56 motion for summary judgment brought by the Teachers Insurance company ("TIC") against plaintiff's claim of unlawful intentional discrimination. Fuller, 2007 U.S. Dist. LEXIS 69845 at 1-2. TIC had denied homeowners' coverage to plaintiff Fuller for damage caused by a 2006 burglary because Fuller was operating the covered residence as a group home for recovering drug and alcohol addicts. Id. at 3-4. Fuller alleged that in 2004 she had notified TIC of the change in use of the home, but upon denial of coverage in 2006 learned that the policy had not been amended to reflect the change. Id. at 4.

TIC argued that the Fourth Circuit's decision in Mackey v. Nationwide Insurance Companies, 724 F.2d 419 (4th Cir. 1984), foreclosed plaintiff's claim. Fuller, 2007 U.S. Dist. LEXIS 69845 at 7-8. Mackey held that discriminatory practices by insurance carriers are not precluded by the Fair Housing Act of 1968 ("FHA"), and more specifically that the FHA does not preclude the practice of "redlining" (or basing availability of insurance coverage on the racial makeup of the neighborhood). Id. at 7-8 (citing Mackey, 724 F.2d at 423). Mackey specifically found that the FHA was silent as to whether it applied to insurance coverage, and found that the failure to include insurance coverage in the FHA in the face of attempts to amend it to include insurance allowed the court to find that it did not. Id. (citing Mackey, 724 F.2d at 423-24). TIC argued that Mackey foreclosed the District Court from finding in favor of plaintiff as a matter of law. Id. at 8.

Judge Fox, however, noted that after Mackey was decided, the Department of Housing and Urban Development ("HUD") had promulgated rules "to prohibit discriminatory practices in providing hazard insurance because of race, color, religion, sex, handicap, familial status, or national origin." Id. at 9 (citing 24 C.F.R. 100.70(d)(4) (1988)) (emphasis added). HUD's newer regulation, therefore, conflicted directly with Mackey's holding permitting "redlining," presenting the same problem the Ninth Circuit faced in Brand X. Prior to Brand X, Judge Fox's only recourse would have been to criticize Mackey, point out the newer regulations in the record, but sustain the discriminatory insurance practice based on stare decisis under the claimed rationale of Neal. "In these circumstances, we need not decide what, if any, deference is owed the Commission . . . . Once we have determined a statute's meaning, we adhere to our ruling under the doctrine of stare decisis, and we assess an agency's later interpretation of the statute against that settled law." Neal, 516 U.S. at 295.

"The question, then, is what becomes of the converse interpretations of the FHA in the area of hazard and casualty insurance when a prior judicial interpretation conflicts with a later agency rule? [] Fortunately, the Supreme Court answered this very question in [Brand X]." Fuller, 2007 U.S. Dist. LEXIS 69845 at 10.

Judge Fox then analyzed Brand X, concluding that "Brand X requires a two prong inquiry in this case. First, whether HUD's promulgations would meet Chevron deference even in the absence of a prior conflicting judicial interpretation, and second, whether the prior judicial holding left any room for agency discretion." Id. at 12. Judge Fox found that the statute was ambiguous and that the legislative history did not foreclose an agency interpretation, thus passing Chevron step one. Id. at 13-14.

Under Brand X, for HUD's anti-discrimination regulations to survive Chevron step two, two requirements had to be met.

First, the regulations must be a "reasonable policy choice for the agency to make" in that "it is in accordance with the law and neither arbitrary nor capricious." Id. at 14-15. Judge Fox found the anti-discrimination regulations to be both "entirely reasonable" and supported under Congress's mandate that HUD engage in rulemaking to enact the FHA's mandate to "end housing discrimination and to foster 'truly integrated and balanced living patterns.'" Id. at 15 (citing Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211-12 (1972) (quoting 144 Cong. Rec. 3422 (1968))).

Second, any existing judicial determination on the matter must leave room for agency discretion. For such judicial foreclosure, the prior court must have held that "the statute unambiguously requires the court's construction." Id. at 16 (quoting Brand X, 125 S. Ct. at 2702).

Judge Fox analyzed the Mackey decision and concluded that while the Fourth Circuit had relied on "traditional tools of statutory interpretation," these did not require the case's holding to flow from an unambiguous statute. Id. at 16. Namely, the court's reliance on congressional silence in the FHA, the statute's legislative history, and the failed amendments did allow the Mackey court's reasonable judicial interpretation, but did not require it. Id. at 16-17. Specifically, the Fourth Circuit did not conclude that the statute was unambiguous or clear as to Congress's intent regarding the insurance industry. Id. at 17. "Therefore, Brand X instructs that because the Fourth Circuit in Mackey did not 'unambiguously foreclose [] the possibility of agency discretion,' this court must recognize HUD's regulations as controlling on the issue of discrimination by the insurance industry under the FHA." Id. at 18-19 (quoting Brand X, 125 S. Ct. 2700-01).

Judge Fox's rejection of the Fourth Circuit's decision in favor of HUD's anti-discrimination regulations demonstrates the leeway that Brand X provides to district courts as interpreters of the law. When an agency's regulatory determination can reach Chevron step two (because it is not foreclosed by unambiguous statutory language), the regulation must be granted deference by the courts. "As the Brand X Court makes clear, a less stringent standard for determining which interpretation should stand would be contrary to the principles of Chevron deference by simply awarding precedence to the statutory interpretation that came first." Id. at 17 (citing Brand X, 125 S. Ct. at 2700-01).[4/]

---

[4/] For its part, the government has consistently requested Chevron deference under Brand X in a wide variety of cases in the Supreme Court, the Federal Circuit, and the United States Court of Federal Claims. See, e.g., Long Island Care at Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007), Amicus Brief in Support of Petitioner: Long Island Care at Home, Ltd. v. Coke, 2006 U.S. Briefs 593 (2007), Adair v. United States, 497 F.3d 1244 (Fed. Cir. 2007), Warner-Lambert Co. v. United States, 425 F.3d 1381 (Fed. Cir. 2007), and Rotech Healthcare, Inc. v. United States, 71 Fed. Cl. 393 (2006).

In the instant case, OPM's applicable FLSA regulations were adopted after notice and comment on December 30, 1980, 45 F.R. 85659, and became effective on January 29, 1981. Under 5 C.F.R. § 551.401 of these long-standing OPM Regulations, "Hours of Work" are defined in relevant part as follows:

> **§ 551.401 Basic principles.**
>
> (a) All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work." Such time includes:
>
> (1) Time during which an employee is required to be on duty;
>
> (2) Time during which an employee is suffered or permitted to work; and
>
> (3) Waiting time or idle time which is under the control of an agency and which is for the benefit of any agency.

5 C.F.R. § 551.401 (2008).[5/]

First, under § 551.401(a)(1), plaintiff can easily establish that he was "on duty" while driving his government vehicle between home and work; and alternatively that under § 551.401(a)(2) he was being "suffered or permitted" to work when driving. See Doe v. United States, 372 F.2d 1347, 1360-61 & nn.6-7 (Fed. Cir. 2004). And, even if plaintiff's driving is viewed as merely constituting "waiting time or idle time," it is equally compensable under OPM's regulations since it is under defendant's direction and control and for its benefit. See Abbott v. United States, 204 F.3d 1099, 1100 n. 1 (Fed. Cir. 2000).

Further, OPM's longstanding regulations at 5 C.F.R. § 551.422(a)(2) (2008), declare that "[t]ime spent traveling shall be considered hours of work if . . . (2) [a]n employee is required to drive

---

[5/] The Fair Labor Standards Act contains no definition of "hours of work."

a vehicle or perform other work while traveling." (Emphasis added). Thus, required home/work driving by plaintiff is expressly declared by OPM to be FLSA compensable "hours of work," without requiring that "the plaintiffs must perform additional legally cognizable work while driving . . . to compel compensation for the time spent driving," as the Federal Circuit held in Adams to be required. 471 F.3d at 1325.

On this basis plaintiff submits that just as was the case in Coke, Brand X, AARP and Fuller, this Court is now obligated to defer to OPM's regulations rather than to the contrary rulings of the Federal Circuit, and that on their face these regulations require this Court to declare plaintiff's home/work driving compensable under FLSA.

Plaintiff submits that the Federal Circuit's decisions in Adams and Bobo stand on the same footing as the Second Circuit's two decisions in Coke, and the Ninth Circuit's decisions in Brand X and Portland. Those decisions were repudiated by the Supreme Court for their failure to defer to the regulations and interpretations respectively of DOL and FCC. In this case the agency charged with administering the FLSA in the Federal sector is OPM, see 29 U.S.C. § 204(f) (2000),[6/] and on their face OPM's regulations unquestionably support plaintiff's position.[7/]

Further, the relevant OPM regulations were adopted on the basis of being consistent with those of the United States Department of Labor ("DOL"). Hence, on December 30, 1980, after

---

6/ "Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States. . ."

7/ In Adams the Federal Circuit neither deferred to, nor even considered, the provisions of OPM's regulations relating to time worked under FLSA. Instead it followed and applied its decision in Bobo.

notice and comment regarding its proposed FLSA regulations, 45 Fed. Reg. 49580 (July 25, 1980), OPM issued its final FLSA regulations. In doing so, it commented as follows:

> Time Spent Traveling
>
> Numerous comments questioned the specific rules for compensable travel time under the Act. These rules are presently contained in FPM Letters 551-10 and 11. The letters also include in depth instructions, with examples, on how the rules are to be applied under the Act. The rules are consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. We recognize that the rules for compensable travel time under title 5, United States Code, differ considerably from those under FLSA. This area is one of the most difficult in premium pay administration because of the dual administrations of title 5 and the FLSA. The rules for compensable travel time must be applied separately under each law, title 5 and FLSA, and nonexempt employees are to be paid under whichever law provides them the greater overtime pay benefit.

Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85661 (Dec. 30, 1980) (emphasis added).

As for the regulations as adopted, they are identical to those at 5 C.F.R. § 551.401 and 5 C.F.R. § 551.422 set forth supra at 13. And OPM expressly declared that these regulations and the rules contained in FPM Letter 551-10 were "consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. . . ." 45 Fed. Reg. at 85661.

A highly instructive decision on the issue presented herein was rendered by the Second Circuit in Singh v. City of New York, 524 F.3d 361 (2nd Cir. 2008) ("Singh"), relating to compensation under FLSA for time spent by employees commuting between home and work. In Singh, the plaintiffs were New York City fire alarm inspectors who were "required by their employer to carry and keep safe necessary inspection documents during their commutes." Id. at 364. Plaintiffs carried their work related documents to work in briefcases, and they commuted to their assigned work locations by subway and bus.

The Second Circuit defined the ultimate issue in Singh to be whether the time involved "'is spent predominantly for the employer's benefit or for the employee's [which] is a question dependent upon all the circumstances of the case.'" Id. at 367 (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944)). In concluding that plaintiff's commuting time was not compensable, the Second Circuit declared:

> Carrying a briefcase during a commute presents only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase. Whether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered. While the City certainly benefits from the plaintiffs' carrying these materials, it cannot be said that the City is the predominant beneficiary of this time.

Id. at 368.

Plaintiff submits that the foregoing analysis distinguishes the instant case from Singh, and places the plaintiffs' driving in the category of FLSA compensable work.[8/] Here plaintiff can and

---

[8/] In Reich v. New York City Transit Authority, 45 F.3d 646 (2nd Cir. 1995), the Second Circuit held home/work driving by New York City Transit Authority dog handlers of their own cars while transporting their assigned dogs not FLSA compensable. The court noted that "no rule require[d] that the handler be the one who drives or that he use his own car." Id. at 648, n. 2. Nor was there evidence that the dog handlers were not free to make personal stops while commuting. In ruling such driving non-compensable, the court declared:

> While no clear standards emerge, certain generalizations can be drawn from these authorities. The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.

Id. at 650 (emphasis added).

Thus the Reich case is clearly consistent with Singh and contrary to Adams in which the driving was exclusively for defendant's benefit.

will prove that his driving has been controlled and directed by defendant and has been engaged in for its benefit. Indeed, for plaintiff to engage in personal activities in the course of home/work driving is punishable under federal law by suspension and discharge. See 31 U.S.C. § 1349 (2000).

Plaintiff submits that the foregoing recitation makes clear that the invocation of Adams by defendant does not serve to entitle it to judgment on the pleadings, and that plaintiff is entitled to litigate his driving claims herein since he has stated a claim successfully under RCFC 12(c).

## III. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH REQUIRED HOME/WORK DRIVING IS FLSA COMPENSABLE.

The relevant OPM regulations were adopted on the basis of being consistent with those of the United States Department of Labor ("DOL"). See supra at 15.

As for the regulations as adopted, they are identical to those presently set forth at 5 C.F.R. § 551.401 and 5 C.F.R. § 551.422. And OPM expressly declared that its regulations were "consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. . . ." 45 Fed. Reg. at 85661.

The most recent pronouncement by the Federal Circuit regarding the requirement that OPM "harmonize" its administration of the FLSA with that of DOL was set forth in Billings v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied, 540 U.S. 982 (2003).

In Billings, the plaintiffs contended that OPM's FLSA regulation defining the executive exemption from FLSA coverage was invalid because it conflicted with DOL's regulations on the ground that DOL imposed a salary-basis test in determining FLSA non-exempt status while OPM did not. In concluding that the differences between DOL's and OPM's regulations relating to the salary test were appropriate, the Federal Circuit declared:

> [W]e must first determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees. See, e.g., Zumerling v. Devine, 769 F.2d 745, 750 (OPM's guidelines must "harmonize with the statute's 'origin and purpose,' . . . as well as with the Secretary of Labor's regulations" (internal citations omitted)).
>
> We conclude that the OPM definition of an "executive" employee is a reasonable interpretation of the Fair Labor Standards Act. As noted above, federal employees are subject to suspensions under Title V that are not applicable in the private sector. Under the interpretation urged by appellants, nearly every federal employee would be considered non-exempt because Title V applies to a vast majority of all federal employees. Because of the peculiar nature of the statutory framework surrounding federal employment, it is reasonable for OPM's regulation to vary from the Labor Department Standard. Moreover, in reviewing the OPM and Labor Department definitions, the regulations are nearly identical, but for the salary-basis test. Thus, the variance in OPM's regulation is no more than needed to accommodate the difference between private and public sector employment. We see no error in the determination by the Court of Federal Claims that the OPM regulation is a reasonable application of the Fair Labor Standards Act to the federal sector.

322 F.3d at 1334.

The principles announced in Billings were subsequently applied by Chief Judge Damich in Angelo v. United States, 57 Fed. Cl. 100 (2003). There the Court concluded that a greater executive authority in the area of hiring or discharge is a required component of the test under DOL's regulations for the executive exemption whereas the Federal Government's construction of the relevant OPM regulation "would have the Court find an employee exempt based merely on authority to promote or advance in pay." Id. at 114. The Court concluded that, "[t]hus, in the context of executive employees, the OPM standard clearly sets out a broader opportunity for exemption (or, from Plaintiffs' perspective, a looser threshold) than the DOL regulations." Id.

The Court then concluded that "there is no apparent justification for why a federal employee should be considered an executive exempt from FLSA overtime requirements because of authority to recommend mere advancement in pay or promotion of subordinates, while a comparable private sector employee is required to demonstrate additional authority to recommend the more significant action of hiring or firing such subordinates." Id. The Court concluded that the OPM regulation had to comply with DOL's regulation and that the Court would hear the parties' evidence regarding this component "as construed herein . . . at trial."[9/]

The incompatibility of the Federal Circuit's rule in Adams with DOL's construction of the FLSA is clear. For example, DOL's current Field Operations Handbook contains a rule (albeit addressing ambulances), that indicates DOL's position on home/work driving:

> In the ordinary case where an employer permits an employee to drive an ambulance to and from his home for the employee's own convenience, the time so spent is not hours worked. If the employee is required to take the ambulance home in order to respond to calls immediately, all the time spent in driving would be hours worked.

Wage and Hour Div., F.O.H. § 31d00(a)(5) (internal citation omitted) (emphasis added).

Plaintiff submits that consistency with DOL's position requires this Court to declare plaintiff's driving to be FLSA compensable. See Am. Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761, 769-772 (D.C. Cir. 1987).

## IV. THE EMPLOYEE COMMUTING FLEXIBILITY ACT SUPPORTS PLAINTIFF'S ENTITLEMENT TO FLSA COMPENSATION FOR HOME/WORK DRIVING.

The Employee Commuting Flexibility Act, Pub. L. No. 104-108, § 2102, 110 Stat. 1755, 1928 (1996) ("ECFA") sheds significant light upon certain questions presented herein. Those

---

[9/] "In short, a demonstration of authority regarding hiring or firing is required. The Court will thus hear the parties' evidence regarding this component as construed herein, as well as the remaining component of the primary duty test, at trial." 57 Fed. Cl. at 114-15.

provisions, enacted by Congress in 1996 as an amendment to the Portal-to-Portal Act, 29 U.S.C. §§ 251-262, provides:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

In Adams the plaintiffs argued that since there was no agreement between the Government and the plaintiffs waiving employee compensation for travel in an employer vehicle between home and work, such travel remained compensable under OPM's regulations.

Defendant responded to plaintiffs' argument as follows in Defendant's Motion for Partial Summary Judgment And Appendix filed in the Claims Court in Adams on August 9, 2002, at 15-16, footnote 7:

> In certain circumstances - particularly in the context of service employees whose work involved traveling in an employer-owned vehicle between various locations where the services are to be provided - driving such a vehicle has been considered a principal activity of the employee. When DOL issued an opinion stating that it was also compensable work to drive such a vehicle from home to the first work site of the day and back home from the last work site of the day, Congress amended the Portal to Portal Act by adding the following language to section 254(a):
>
>> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on

> the part of the employer and the employee or representative of such employee.

> Pub. L. No. 104-188, § 2102; 110 Stat. 1755, 1928 (1996). As the House Committee on Economic and Educational Opportunities explained, this amendment was prompted by the DOL's assertion "that the time spent by an employee traveling from home to the first work assignment, or returning home from the last assignment, was similar to that of traveling between jobs during the day and therefore represented a principal activity, which must be compensated." H.R. Rep. No. 585, 104th Cong., 2nd Sess. (1996), p. 2 (emphasis added). The amendment provided "clarification regarding the use of an employer-provided vehicle for travel from an employee's home to the first work location at the start of the workday and from the last work location to the employee's home at the end of the workday." Id. at 4. The added language clarifies that, under the specified conditions, the latter travel is not to be treated as a principal activity even if driving an employer-owned vehicle between various work locations is a principal activity. However, here, as in Bobo, the plaintiffs' principal activity during the work day does not consist of driving to a series of work assignments at a series of locations. Thus, the DOL analogy that prompted the amendment does not apply here, and there is no basis for viewing plaintiffs' commuting as a principal activity to begin with.

The significance of defendant's statement is that it acknowledges that it was DOL's position that "it was compensable work to drive such a vehicle from home to the first work site of the day and back home from the last work site of the day . . ." which was "similar to that of traveling between jobs during the day and therefore represented a principal activity, which must be compensated." (Emphasis in original.)

As plaintiff will demonstrate herein, driving of defendant's vehicles by plaintiff falls within the foregoing description of driving which constitutes compensable principal activity as to which the plaintiff never agreed to waive his FLSA overtime compensation. Indeed, such compensation remains due and owing.

For her part Judge Bush believed that ECFA did not apply as a defense against plaintiffs' claims because of the absence of the requisite agreement between employer and employee:

> ECFA . . . would apply . . . as a defense against liability under FLSA, if any employer-employee agreement fixing noncompensability of commuting time had been alleged. . . . Because there has been no allegation in any of the motions of such an agreement, ECFA is inapplicable to the summary judgment motions reviewed here. (65 Fed. Cl. at 226).[10/]

Indeed, the same conclusion had been reached earlier by the Claims Court in Bobo v. United States, 37 Fed. Cl. 690, 697 (1997).

Notwithstanding the foregoing, in reliance upon ECFA's language, the Federal Circuit concluded as follows in Adams:

> Therefore, merely commuting in a government owned vehicle is insufficient; the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving. The question in this appeal is whether the requirements and restrictions placed on plaintiffs' commutes rise to that level. (471 F.3d at 1325).[11/]

Plaintiff submits that on its face, nothing in the language of ECFA supports the Federal Circuit's conclusion since the critical issue required to bring ECFA into play is the presence of "an agreement" between the parties waiving compensation for driving. Such agreement is admittedly absent here. And indeed this conclusion by the Federal Circuit conflicts with the position of DOL regarding ECFA. See Proposed Department of Labor Regulations regarding ECFA that were

---

[10/] However, Judge Bush did not believe that ECFA supported the Adams plaintiffs' entitlement to compensation for home/work driving. See 65 Fed. Cl. 224-227.

[11/] The Government had not advanced this argument in its brief or in oral argument before the Federal Circuit in Adams.

published in the Federal Register on July 28, 2008, 73 Fed. Reg. 43654-43673, in which DOL makes clear that for ECFA to come into play an "agreement" must exist.

Several observations flow from the foregoing recitation. First, plaintiff submits that the claim that plaintiff herein was engaged in compensable driving from home to his first field work site and from his last field work site to his home was not litigated at all in Adams. Hence, this case is one of first impression and is not controlled by Adams, in which it was not claimed that the plaintiffs compensable driving was from home to a "first stop."

Next, it is clear that "first stop" driving is considered compensable by DOL because it resembles driving from "stop to stop" during the workday; and finally, the Federal Circuit's conclusion that ECFA required that "plaintiffs must perform additional legally cognizable work while driving to their workplace"is not supported by ECFA's language.

Accordingly, plaintiff submits that the fact that ECFA is not applicable herein to deny his claim supports his entitlement to recover for his home/work driving and that he in any event has stated a claim under RCFC 12(c).

## V. THE ADAMS CASE DID NOT INVOLVE DIVERSION INVESTIGATORS.

As to the plaintiff Diversion Investigator's driving claims, which are the only ones involved in this case, they were not litigated at all in Adams. Diversion Investigators drove and drive between home and work performing "field work" in accordance with the provisions of 31 U.S.C. § 1344 which declare in relevant part:

> § 1344. Passenger carrier use
>
> (a)
>
> (1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the

> extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.
>
> (2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is—
>
> > (A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section . . .
>
> * * *
>
> is transportation for an official purpose, when approved in writing by the head of the Federal agency.
>
> * * *

The regulations regarding "Home-To-Work Transportation" referred to in 31 U.S.C. § 1344 are set forth at 41 C.F.R. § 102-5 (2007). A copy of those regulations is attached as Plaintiff's Exhibit 1. Among the relevant provisions of these regulations, which plaintiff submits support the compensability of his driving as a Diversion Investigator involving "field work," are the following:

§ 102-5.30 provides the following definitions:

> <u>*Field work* means official work requiring the employee's presence at various locations other than his/her regular place of work</u>. (Multiple stops (itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)

(Emphasis added.)

* * *

§ 102-5.70 provides as follows in sub-section (b):

> The use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the Government.

(Emphasis added.)

* * *

§ 102-5.95 provides as follows:

> Is the comfort and/or convenience of an employee considered sufficient justification to authorize home-to-work transportation? No, the comfort and/or convenience of an employee is not considered sufficient justification to authorize home-to-work transportation.

* * *

§ 102-5.120 provides as follows:

> What are [agencies'] responsibilities for documenting use of home-to-work transportation?
>
> Your responsibilities for documenting use of home-to-work transportation are that you must maintain logs or other records necessary to verify that any home-to-work transportation was for official purposes. Each agency may decide the organizational level at which the logs should be maintained and kept. The logs or other records should be easily accessible for audit and should contain:
>
> (a) Name and title of employee (or other identification, if confidential) using the passenger carrier;
>
> (b) Name and title of person authorizing use;
>
> (c) Passenger carrier identification;
>
> (d) Date(s) home-to-work transportation is authorized;
>
> (e) Location of residence;
>
> (f) Duration; and

(g) Circumstances requiring home-to-work transportation.

(Emphasis added.)

Thus the applicable regulations both of OPM set forth supra at 13, and of the Government Services Administration ("GSA") attached hereto as Plaintiff's Exhibit 1, support the conclusion that home/work driving for the purposes of conducting "field work" is FLSA compensable since they show that such driving meets OPM's regulatory requirements for defining FLSA "hours of work."

## VI. STARE DECISIS DOES NOT APPLY.

Defendant appears to contend that under the doctrine of stare decisis the Federal Circuit's Adams decision is dispositive herein. However, it is well-settled that at best "the doctrine of stare decisis applies to only legal issues and not issues of fact." Avenues in Leather v. United States, 423 F.3d 1326, 1331 (Fed. Cir. 2005). Thus, while stare decisis "makes each judgment a statement of the law, or precedent, binding in future cases, . . . [i]t deals only with law, as the facts of each case must be determined by the evidence adduced at trial. . . ." Mendenhall v. Cedar Rapids, Inc., 5 F.3d 1557, 1570 (Fed. Cir. 1993) (internal citation omitted). Thus plaintiff is fully entitled to present his factual and legal case to this Court as well as to distinguish this case from Adams on both facts and law. Hence, defendant's RCFC 12(c) motion is simply not capable of resolving this case.

That the application of stare decisis is limited is reflected in a "Panel Discussion on Intra-Circuit Conflicts," which occurred in 2001 at the Third Bench and Bar Conference of the Federal Circuit Bar Association in which Federal Circuit Chief Judge Michel participated as a panelist. In the course of responding to a question, Chief Judge Michel stated:

> **Judge Michel** . . . We have a case, a predominant case about stare decisis and later panels being bound as Null, so sometimes people talk about the Rule of Null and en gros in the sort of first cut, a crude analysis, the Rule of Null is that later panels are bound by every

> decision of every earlier panel and that's right but it's not the end of the analysis. I would suggest to you that there are some subtler variations. So, let's call that Null 1 and I'm going to give you my personal version of Null 2, 3, and 4. These aren't real decisions but if you search around, I think you can find this in our precedent. Null 2 would be, if the later panel distinguishes, let's assume fairly, the apparently conflicting earlier decision, then the Rule of Null 1 does not apply. That is the second panel's decision can be different and it's legitimate. Null 3 would be where a Supreme Court case controls; it would trump the earlier panel so the later panel would be free to do what it did and it would be legitimate assuming that the analysis is fair and then Null 4, and this is the most controversial, and these are just my own ideas of course. Null 4 would be, if the earlier decision had no analysis, cited no authority, but just made a statement, a single sentence just declaring some proposition of law. The later panel has a lot more flexibility in that circumstance where it can provide principled reasons and can cite authority to go on a divergent path. So there are a lot more subtleties than just the iron law that the first case always trumps every later case. It's not that simple.

See 11 Fed. Cir. B.J. 623, 648-649 (2001).

In this case plaintiff submits that the law has been modified significantly since Adams on the basis of the Supreme Court's Coke and Brand X decisions, so that Judge Michel's "Rule of Null 3" is applicable. Plaintiff also contends that Adams does not "trump . . . every later case," and that it is inapplicable based upon the unique and distinct facts to presented in this case relating to home/work driving by Diversion Investigators. Thus plaintiff submits that defendant's motion for judgment on the pleadings must be denied and this case must proceed to consideration on summary judgment.

## VII. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS.

That the denial of a petition for writ of certiorari provides no indication of the Supreme Court's views upon the merits of a case needs no explication. As the Supreme Court has

consistently declared, "[t]he denial of a writ of certiorari imports no expression upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490 (1923). See Martin v. Texas, 382 U.S. 928, 929 (1965); Chessman v. Teets, 354 U.S. 156, 164 n. 13 (1957); Brown v. Allen, 344 U.S. 443, 491-492 (1953) (opinion of Frankfurter, J.).

Likewise, this is true of the Federal Circuit's denial of the Adams plaintiffs' Petition for Rehearing En Banc. Rule 35(a) of the Federal Rules of Appellate Procedure declares:

> (a) When Hearing or Rehearing En Banc May Be Ordered. A majority of the circuit judges who are in regular active service and who are not disqualified may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc. An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless:
>
> (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or
>
> (2) the proceeding involves a question of exceptional importance.

Accordingly, the denial of the Appellants' Petition for Rehearing En Banc in Adams may not be interpreted as reflecting approval of the panel's decision in Adams by the entire Federal Circuit.

Thus, plaintiff is entitled to litigate this case to a conclusion notwithstanding the Federal Circuit's decision in Adams. And he is entitled to do so based upon a full factual record.

## CONCLUSION

For the reason set forth herein, defendant's motion for judgment on the pleadings must be denied.

Respectfully submitted,

OF COUNSEL:
Linda Lipsett

**s/Jules Bernstein**
Jules Bernstein (Counsel of Record)
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

**s/Edgar James**
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Attorneys for Plaintiff

Dated: July 31, 2008

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 31st day of July 2008, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, DISMISSING "DRIVING TIME" CLAIMS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.